UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BETH LAVALLEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:15-cv-01922-DML-WTL |
| | ) |
| MED-1 SOLUTIONS, LLC, | ) |
| | ) |
| Defendant. | ) |

## Order on Cross-Motions for Summary Judgment

This case concerns whether defendant Med-1 Solutions, LLC, a debt collector, violated a provision of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g(a), that requires the debt collector to send a validation notice to the debtor with its initial communication to collect the debt or within five days after that initial communication. Both parties have moved for summary judgment, and they agree that the material facts are not disputed. As explained below, the court determines plaintiff Beth Lavallee is entitled to judgment as a matter of law. Ms. Lavallee's motion for summary judgment (Dkt. 33) is GRANTED. Defendant Med-1 Solutions, LLC's motion for summary judgment (Dkt. 26) is DENIED. Judgment will be entered in favor of Ms. Lavallee for statutory damages, costs, and reasonable attorneys' fees, with costs and fees to be determined upon the filing of an appropriate motion under Rule 54(d).

## Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines the facts that are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

Here, the material facts are not disputed, and the court can decide as a matter of law whether Med-1 Solutions violated FDCPA Section 1692g(a).

## Undisputed Material Facts

The court considers the following undisputed facts.

Defendant Med-1 Solutions, LLC is a debt collector within the meaning of the FDCPA. Plaintiff Beth Lavallee incurred two consumer debts for medical services provided to her by a hospital, the original creditor. Med-1 Solutions sought to collect those two debts.

As part of its collection activity, Med-1 Solutions uses a vendor (Privacy Data Systems, its sister company) that created a software application called "SenditCertified™." Nell Dep., Dkt. 27-1, 13:15-23. Med-1 Solutions supplies data through a data batch process to the vendor about debts it seeks to collect. The vendor's software application extracts the data and inputs it to populate a .pdf document. *Id.,* 22:2-14 and 23:3-9. The .pdf document is "sent" to the intended recipient by email as a "secure package" in the following manner. The recipient is sent an email; the sender on the email is Info@med1solutions.com. *Id.,* 26:20-22. The subject of the email is that "Med-1 Solutions has sent you a secure message."

*See* Dkt. 33-1 at p. 66; Nell Dep., 26:9-17. If the email is opened by the recipient, the message reads: "Please find your message attached," thus alerting the recipient that she can pick up a "secure message" by clicking a link. *Id.,* 14:5-11; Nell Exh. 4, Dkt. 33-1. The email itself also includes Med-1 Solutions' name, phone number, and address.

If the recipient clicks the link, she is redirected over the internet via a web browser to access the vendor's web server where there is another message "instructing the user to accept their attachment," *i.e.,* the .pdf "secure package." *Id.*, 23:10-16. The recipient can "accept" the attachment by checking a box to "sign for this Secure Package" and verify that she is the person whose name and email is listed. *Id.,* 34:1-11; Nell Exh. 2, Dkt. 33-1 at p. 59. If that box is checked, the recipient finally is given access to the .pdf document if she clicks on the "Open Secure Package" button appearing on her screen. *Id.,* 34:1-11; Nell Exh 2, Dkt. 33-1 at p. 60.

That .pdf "secure package" contains a letter to the recipient from Med-1 Solutions that is Med-1 Solutions' FDCPA Section 1692g(a) notification. *See* Dkt. 27-3 (the Section 1692g(a) notification for one of Ms. Lavallee's two debts that was her "secure package").

Med-1 Solutions provided the vendor with data about the two hospital debts it sought to collect from Ms. Lavallee, and the above process was used to send an

3

email to Ms. Lavallee related to each debt.[1]  The first email (for the first debt) was sent on March 20, 2015, and the second email (for the second debt) was sent on April 17, 2015.

The email address used by Med-1 Solutions' vendor for Ms. Lavallee was one she had given the hospital.  Ms. Lavallee regularly checks her email inbox and her email spam folder, which automatically deletes spam emails when they age over 30 days.  Although Ms. Lavallee does not remember receiving either the March 20 or April 17 emails, Med-1 Solutions' vendor did not receive any error message indicating a problem in the transmission of either email.  The emails were not returned as undelivered.  Nell Dep., 45:16 to 46-10.  Med-1 Solutions' vendor and Med-1 Solutions know too, however, that Ms. Lavallee never viewed or accessed the .pdf "secure package" document for either debt. That is because the vendor's system "records any attempt to view [the .pdf document, or "secure package"]" and there was no record of any attempt to view the secure packages.  *Id.,* 46:11-21.  If Med-1 Solutions wishes to determine whether a .pdf secure package has been viewed by the debtor, it can ask the vendor or it can check its own logs.  *Id.*, 46:22-25.

Therefore, it is undisputed that for each of the two debts at issue (1) Ms. Lavallee received an email from Info@med1solutions.com advising her she had an

---

[1]  The process for the vendor to receive Med-1 Solutions' batch data for debts and the vendor to then send emails to debtors "can take anywhere from a minute to maybe an hour" depending on the size of the data file.  *See* Nell Dep., Dkt. 27-1, 38:15-21.  Once data is populated into the .pdf document, the email to the debtor is sent nearly simultaneously. *Id.,* 38:22 to 39:5.

4

important message, (2) the email itself did not include Med-1 Solutions' Section 1692g(a) validation notice related to the debt or even mention the hospital,[2] and (3) Ms. Lavallee never accessed the web server that contained the validation notice and never opened the .pdf secure package.

The court now applies these facts in light of the applicable law.

## Analysis

The sole question presented by this case is whether under the above facts, Med-1 Solutions sent to Ms. Lavallee a debt notification letter in compliance with the FDCPA.[3] The statutory provision at issue, 15 U.S.C. § 1692g(a) (emphasis added), reads as follows:

> **(a) Notice of debt; contents.** Within five days after the initial communication with a consumer in connection with the collection of any debt, **a debt collector shall**, unless the following information is contained in the initial communication or the consumer has paid the debt, **send the consumer a written notice** containing—
>
> **(1)** the amount of the debt;
>
> **(2)** the name of the creditor to whom the debt is owed;
>
> **(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any

---

[2] Ms. Lavallee does not dispute that the validation letter contained in the .pdf secure package satisfies the content requirements of FDCPA Section 1692g(a).

[3] On November 12, 2015, Ms. Lavallee received a call from the hospital about a debt she allegedly owed it. She was told that at least one other debt had been referred to Med-1 Solutions for collection and only Med-1 Solutions could discuss that debt with her. Ms. Lavallee called Med-1 Solutions the same day and learned that Med-1 had filed a lawsuit against her to collect a debt. Med-1 Solutions did not send a Section 1692g(a) notification letter after that telephone call. Lavallee Aff., Dkt. 33-2. Rather, it is relying on the emails that were sent in March and April 2015, and which are the subject of this suit, as its compliance with Section 1692g(a).

> portion thereof, the debt will be assumed to be valid by the debt collector;
>
> **(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> **(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**I.      Med-1 Solutions did not send a validation notice to Ms. Lavallee as required by Section 1692g(a).**

Med-1 Solutions contends that because it is undisputed that it sent emails to Ms. Lavallee that, through a few steps by Ms. Lavallee, would have provided her with the Section 1692g(a) validation letter, it therefore *sent* the required notice. Med-1 Solutions asserts that under the statute's plain reading and interpretive case law by some courts, it is irrelevant that Ms. Lavallee did not actually receive the notice, and she must accept the consequence of failing to open documents that were sent to her via this email attachment process.

Med-1 Solutions argues that the statute's plain language requires only that the debt collector *send* the validation notice, citing general case law that a court must construe a statute according to its plain meaning, a proposition the court accepts. Med-1 Solutions also relies on one district court case, which cites a case from the Ninth Circuit, to support its argument that a Section 1692g notice must only be sent and it is irrelevant whether it is received. In *Heling v. Creditors*

6

*Collection Service, Inc.,* 2016 WL 4625683 (E.D. Wis. Sept. 6, 2016), the court rejected the debtor's argument that because she presented evidence on summary judgment to dispute that she had received the notice, she had rebutted the presumption under the mailbox rule that the collector's undisputed mailing of the notice satisfied its statutory obligation to send her the notice. The court found that the "seminal Ninth Circuit case holds that the collector need only send a validation letter, not ensure receipt," citing *Mahon v. Credit Bureau of Placer County Inc.,* 171 F.3d 1197, 1201-02 (9th Cir. 1999). The debtor's affidavit testimony that she did not receive the letter was irrelevant. 2016 WL 4625683 at *6. In *Mahon,* the debtor argued that Section 1692g(a) requires a "communication" between a debt collector and the debtor and a communication cannot be deemed to have been "sent" unless it is also received. The debtor asserted that the statute therefore requires the collector to prove *actual receipt* by the debtor. 171 F.3d at 1201. The court rejected that interpretation of the statute and found that because the debt collector established that it had sent the notice by first class mail to the debtor's home address, the debtor's complaint that he did not receive the notice did not create a genuine issue of material fact: "Instead, the plain language [of the statute] states that such a Notice need only be sent to a debtor." *Id.* at 1201-02.

As *Mahon* recognized, the sending of a notice (or other communication) by first class mail that is properly addressed is presumed to have been received by the addressee under the common law's mailbox rule. *Id.* at 1202 ("Having already determined that the Notice required by the FDCPA was sent to the [debtor] by the

7

[debt collector], we presume that it was received shortly thereafter.")  Indeed, it is the *presumption of receipt* that makes the sending of notice by the debt collector sufficient without the collector proving *actual* receipt.  But if notice is not sent in a manner in which receipt should be presumed as a matter of logic and common experience, then it cannot be considered to have been "sent."  Cases cited by Ms. Lavallee, which were ignored by Med-1 Solutions, establish this common sense proposition.

In *Johnson v. Midland Credit Mgmt. Inc.,* 2006 WL 2473004 (N.D. Ohio Aug. 24, 2006), the debt collector's validation notice was returned to it by the postal service as undeliverable; the debtor had not lived at that address for years.  The court found that the notice could not be deemed to have been "sent" to the debtor because it was sent to a wrong mailing address.  It reasoned that even though the statute does not require the debt collector to ensure actual receipt, it requires "the debt collector to send the validation notice to a valid and proper address where the consumer may actually receive it" because Section 1692g exists to inform debtors of their rights.  2006 WL 2473004 at *12.  If a debt collector could use any means to send its validation notice and to any address, whether valid or invalid, the purpose of providing the validation notice would be wholly defeated.  *Id.*

The court in *Johnson v. CFS II, Inc.,* 2013 WL 1809081 (N.D. Cal. Apr. 28, 2013), similarly ruled that a validation notice sent to an inaccurate address is not "sent" within the meaning of the statute because it "does not serve to inform" the debtors of the rights and requirements listed in Section 1692g(a).  *Id.* at *8.  The

8

court stated its agreement "with the federal courts that have found that, if a debtor rebuts the presumption of proper delivery by showing the notice was sent to an incorrect address or returned as undeliverable, the language and purpose of the FDCPA require further action by a debt collector." *Id.* at 9.

The court concludes that Med-1 Solutions did not "send" the validation notice as required by the statute. It knows (and knew, or easily could have determined at the time) that its notice was not delivered to Ms. Lavallee. She never accessed, or attempted to access, the "Secure Package" containing the validation notice, and the email itself did not contain the validation notice.[4] The name of the product of Med-1 Solutions' sister company—"SenditCertified™"—is noteworthy. The name connotes a system by which a sender receives certification that the item was received—like certified mail. But here, Med-1 Solutions asks the court to ignore the undisputed facts that its notices were not delivered to Ms. Lavallee and that Med-1 Solutions knew or could have easily determined that fact. What Med-1 Solutions requests is akin to the sender of a certified mailing claiming notice was effected without a "green card."

Further, Med-1 Solutions' system of transmission is one that's not even likely to accomplish receipt of the validation notice. Not opening an email attachment is not the same as failing to open a letter one receives through the United States Post

---

[4] Ms. Lavalle has argued that a notice sent by email should not enjoy the same presumption of receipt as a notice sent by United States mail. The court does not need to address that issue and does not do so here, because the statutory notice was not in the email sent to Ms. Lavallee. The court decides only the question presented by the undisputed facts outlined in this order.

9

Office mail system. It is the proven reliability of the latter system—the very high probability that a properly addressed letter reaches its destination—that led to the common law mailbox rule presumption. *See Rosenthal v. Walker,* 111 U.S. 185, 193 (1884).[5] The same cannot be said for documents delivered as a web-based email attachment. Med-1 Solutions has offered no evidence that its system yields a similar result as the U.S Mail and therefore merits the same presumption underlying the "mailbox rule." Indeed, in the court's estimation, such attachments are more likely not to be opened and delivered than to be opened.

As described in the facts section, for Ms. Lavallee even to have had an opportunity to receive the validation notice, she was required to open an email and then click through over the internet to an unknown web browser inviting her to then open a "Secure Package." Contrary to Med-1 Solutions' argument, modern consumer practices are not conducted this way.

Although a consumer may regularly open e-mails from persons and companies she knows and to which she has given her email address for communications[6] (like a recognized email from the utility company or the bank one does business with), there is no evidence that Ms. Lavallee should have recognized

---

[5] The Court in *Rosenthal* stated: "The rule is well-settled that if a letter properly directed is proved to have been either put into the post-office or delivered to the postman, it is presumed, from the known course of business in the post-office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed." 111 U.S. at 193.

[6] There is no evidence that Ms. Lavallee gave her email address to Med-1 Solutions or ever anticipated that her email would be given to it, and no evidence that she even knew of Med-1 Solutions when the March and April emails were sent.

as safe an email from Med-1 Solutions. Today, email users are regularly warned and know to beware of email invitations to click on web-based attachments. The United States Department of Homeland Security has issued a Security Tip (ST04-010), originally released in 2009 and updated in 2017, warning the public to use caution with email attachments because they can be sources of viruses. *See https://www.us-cert.gov/ncas/tips/ST04-010*. The Department of Homeland Security warns that email attachments are a "common tool for attackers" and if an email attachment seems suspicious, "don't open it." *Id.*

For the foregoing reasons, the court determines that Med-1 Solutions did not "send" to Ms. Lavallee the validation notice as required by 15 U.S.C. § 1692g(a).

**II.     Ms. Lavallee is not required to prove that she was "misled" by Med-1 Solutions' failure to send a validation notice.**

Med-1 Solutions also argues that it cannot be liable for violating the FDCPA unless Ms. Lavallee also shows that she was confused or misled by the emails that were sent to her. The court rejects its argument. The court has concluded that Med-1 Solutions did not comply with its obligation under the statute to send Ms. Lavallee a validation notice. She does not additionally need to show that she was misled or confused by a validation notice that was never sent. As the Seventh Circuit discussed in *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 324 (7th Cir. 2016) (emphasis in original), Congress determined through its enactment of Section 1692g(a) that a debt collector *must* provide certain information to a debtor and "the failure to make the disclosure is a failure the Act is meant to penalize." A debtor cannot avoid liability for failing to comply with Section 1692g(a) by arguing

11

that particular information required by the statute was not really that important in a particular case or was not material to the particular debtor. *Id.*

### III. The court will award statutory damages of $1,000.

In her summary judgment brief, Ms. Lavallee argued that the court should award her statutory damages of $1,000.00, which is the upper limit awardable as statutory damages under the FDCPA. 15 U.S.C. § 1692k(a)(2)(A). Med-1 Solutions did not respond to that argument and has not contested that a $1,000.00 statutory award is appropriate if Ms. Lavallee is entitled to judgment that it failed to comply with FDCPA Section 1692g(a). The court determines that $1,000.00 is an appropriate award of statutory damages in this case. Ms. Lavallee is also entitled to recover costs and reasonable attorneys' fees under 15 U.S.C. § 1692k(a)(3).

### Conclusion

For the foregoing reasons, the court GRANTS Ms. Lavallee's motion (Dkt. 33) for summary judgment and DENIES Med-1 Solutions, LLC's motion (Dkt. 26) for summary judgment. The court awards $1,000.00 in statutory damages to Ms. Lavallee, costs, and reasonable attorneys' fees. Ms. Lavallee must file her motion for fees and costs as provided by Fed. R. Civ. P. 54(d).

So ORDERED.

Date: 9/29/2017

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system